**LYETH v. HOEY, Collector of Internal
Revenue.
No. 142.**

Circuit Court of Appeals, Second Circuit.

March 18, 1940.

CLARK, Circuit Judge, dissenting.

John T. Cahill, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of· counsel), for defendant-appellant.

Maclay, Lyeth & Williams, of New York City (J. M. Richardson Lyeth, Allin H.

Pierce, and Donald M. Harris, all of New York City, of counsel), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought to recover an overpayment of income taxes for the year 1933 and interest, amounting to $65,030.87, out of which the defendant seeks recoupment of an estate tax deficiency of $54,-976.47, recovery of which is barred by the statute of limitations.

An income tax deficiency for the year 1933 was assessed against the plaintiff and the tax was paid to the Collector. The assessment was illegal because the property received on which the deficiency was based was exempt from taxation as income inasmuch as it was not income but an inheritance of the plaintiff from the estate of his grandmother Mary B. Longyear. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410. The Collector objects to refunding the full amount of the overpayment of income taxes on the ground that when it was made on October 16, 1936, there was due from the executors of the will of Mary B. Longyear, and also from the plaintiff as transferee and distributee of her estate, an additional estate tax of $43,275.67 which, with interest then accrued, amounted to $54,976.47. The Collector accordingly insists that the plaintiff's recovery should be limited to $10,054.40, which is the difference between the claim of $65,030.87 and the unpaid estate taxes and interest amounting to $54,976.47.

On December 20, 1938, the Commissioner made a determination that there was a deficiency in estate taxes from the executors of the will of Mary B. Longyear and from the plaintiff as a transferee of the estate, and the Collector claims the right to recoup this deficiency against the plaintiff's overpayment of income taxes. The period of limitation for the assessment of estate taxes against the executors of Mary B. Longyear, or for the commencement of any proceeding for the collection of such taxes from them, expired November 22, 1935. Section 310(a), Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 248. The additional year for a proceeding against a transferee by assessment or suit expired November 22, 1936. Section 316(b) (1), 26 U.S.C.A. Int.Rev.Acts, page 254.

The plaintiff filed his claim for refund on November 4, 1936, and brought this action to recover the overpayment of income taxes assessed against him on October 4, 1938. The answer setting up the claim of the Collector for recoupment was interposed in January 1939. Upon a motion for summary judgment the District Court held that under the decision of the Supreme Court in McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, Sections 607 and 609(a) of the Revenue Act of 1928 prohibited the government "from crediting the amount of any tax overpayment against a barred deficiency." [27 F.Supp. 9, 10.] These sections read as follows:

Section 607 (45 Stat. 874, 26 U.S.C.A. Int.Rev.Acts, page 459: "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after the enactment of this Act) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

Section 609(a), 45 Stat. 875, 26 U.S.C.A. Int.Rev.Acts, page 460: "Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 607 [1670]."

The government argues that Section 609(a) only prevents it from taking a credit against a liability of a taxpayer for income, war-profits or excess-profits taxes and not for estate taxes, since the section in terms refers to "a credit against a liability for any taxable year", and estate taxes are not payable annually. The argument is not convincing, first because an estate tax is a liability "in respect of [the] taxable year" in which it becomes due; second, because, when section 609(a) invalidates a credit against a tax liability it precludes such a credit whenever any payment in respect to it would be considered an overpayment under section 607, and section 607 declares that "any tax * * * assessed or paid * * * after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment." If a payment of the amount of estate taxes due here had been made after the expiration of the period of limitation it would be considered an overpayment under section 607; and because of the provisions

of section 609(a) the taxpayer's claim to income taxes unlawfully collected could not be credited against the government's claim for such estate taxes. In other words, the "liability" against which a credit is made void by section 609(a) is a liability for "any tax" which includes a "liability" for an estate tax. Accordingly, while the Supreme Court in McEachern v. Rose, 302 U.S. 56, 62, 58 S.Ct. 84, 82 L.Ed. 46, denied a credit of income taxes "barred by limitation", it suggested no distinction between such taxes and other barred taxes and the language of section 607 is too broadly comprehensive to validate such a credit against the estate tax liability of the taxpayer in the case at bar. Recoupment of a barred claim was allowed in Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, but the court distinguished that decision in McEachern v. Rose, supra, on the ground that in Stone v. White a credit could not have been taken either under sections 607 or 609(a), or under section 322 of the Act of 1932, 26 U.S.C.A. Int.Rev. Acts, page 571, for the reason that rights of different taxpayers were there involved. As the case did not fall within sections 607 and 609(a) the court was free to apply the general equitable doctrine of recoupment.

Section 608 of the Act of 1928, 45 Stat. 874, 26 U.S.C.A. Int.Rev.Acts, page 459, so far as here material, reads as follows:

"A refund of any portion of an internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) made after the enactment of this Act, shall be considered erroneous—

"(a) If made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; or

"(b) In the case of a claim filed within the proper time and disallowed by the Commissioner after the enactment of this Act, if the refund was made after the expiration of the period of limitation for filing a suit, unless—

"(1) Within such period suit was begun by the taxpayer, or

"(2) Within such period, the taxpayer and the Commissioner agreed in writing to suspend the running of the statute of limitations for filing suit * * *."

Section 609(b), 45 Stat. 875, 26 U.S.C.A. Int.Rev.Acts, page 460, provides that: "A credit of an overpayment in respect of any tax shall be void if a refund of such overpayment would be considered erroneous under section 608 [1674]."

It is evident that the foregoing provisions are complementary to those of sections 607 and 609(a) which have already been referred to. Section 609(a) prevents the government from crediting barred taxes upon the claim of a taxpayer for overpayment of any tax and section 609(b) in like manner protects the government against a credit of a claim for barred taxes of any kind.

A comparison of these sections affords a reason in addition to that arising from the words "any tax" found in section 607 for regarding the clause "in respect to any taxable year" found in section 609 (a) as involving no limitation to taxes of a particular class. Section 609(b) clearly prohibits a credit to the taxpayer against any tax liability where his claim is barred, and the prohibition is laid without regard to any "taxable year". It cannot be supposed that section 609(a) invalidates credits of barred claims upon liabilities for income, war-profits and excess-profits taxes only, while section 609(b) invalidates such credits upon liabilities for all taxes.

A further reason urged by the government for holding section 609(a) inapplicable is that the word "credit" as used in that section does not refer to this type of case. Section 322(a) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 436, reads: "Where there has been an overpayment of any tax imposed by this title [chapter], the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer."

The government argues that since section 322 permits crediting of overpayments against "income, war-profits, or excess profits tax", no other type of "crediting" is allowed; that the Commissioner cannot credit against an estate tax liability; that, therefore, sections 607 and 609(a) are inapplicable; and that if they are inapplicable recoupment may be allowed under the doctrine of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265. But, as pointed out above, the Supreme Court declared in McEachern v. Rose that recoupment was allowed in Stone v. White because the rights of different taxpayers were involved and the Commissioner could not credit the

overpayment of one against the liability of the other.

But there is little reason to limit the scope of the word "credit" as used in sections 607 and 609(a) to an ability to credit against liabilities for income, war-profits or excess profits taxes only. Indeed, the government brief declares that the implied authority to credit overpayments against any liabilities "is in line with the general policy declared by the tax laws * * * that when a taxpayer files a claim for refund of an overpayment he shall recover only to the extent that the overpayment exceeds the amount of taxes then due from him." Should the narrow interpretation be put on "credit", the Commissioner would have no administrative means of setting off an estate tax overpayment against an estate tax liability unless there were resort to the Board of Tax Appeals by the taxpayer. 26 U.S.C.A. Int.Rev.Code, §§ 910–912. The broad language not only of sections 607 and 609(a), which prohibit credits in favor of the government, but of sections 608 and 609(b), which prohibit credits in favor of the taxpayer, would thus have an unwarrantedly restricted meaning. Any argument that the Commissioner may not credit here because different types of taxes are involved must rest on an implied prohibition read into the terms of section 322(a). Any such prohibition must necessarily include an invalidation of the Commissioner's power to credit, for example, gift tax overpayments against gift tax liabilities, even where there is no bar of the statute of limitations. It seems clear that the crediting clause of section 322(a) was not intended to be exhaustive but only descriptive of particular instances in which credits are proper. To treat it otherwise is to restrict the broad language of section 609(a) and its related sections unduly and to confine in a surprising way the right of credit, even where the statute of limitations is not a bar.

The government argues, however, that if the Commissioner has the power to "credit", he should be allowed to credit here because the right to recover the estate taxes as against the executors was not barred by limitation on November 4, 1936, when the claim for refund of the overpayment of income taxes was filed, and was not barred against the plaintiff as transferee until November 22, 1936. But when the action to recover the overpayment was begun, the claim for estate taxes

had become barred and the situation existing when the claim for refund was filed had then ceased to have any importance. The government's contention that it had importance is based upon the statement in McEachern v. Rose, 302 U.S. 56, 62, 58 S. Ct. 84, 87, 82 L.Ed. 46, that: "The date of the claim for refund and the date of the allowance of the credit * * * came after recovery of the 1928 tax was barred." This statement was in no sense a holding that the situation existing at the time of the filing of the claim for refund is determinative of the right to recoupment. Though an action to recover an overpayment is conditioned upon the filing of such a claim, the action itself is the real assertion of the taxpayer's right growing out of the overpayment. Section 322(a) of the Act of 1928 provides that where an overpayment of taxes has been made any balance, after crediting it against any income, war-profits or excess profits taxes due from the taxpayer "shall be refunded immediately to the taxpayer". This does not mean to define the time at which setoffs are to be allowed or to prescribe that taxes enforcible at the time the claim for refund was filed but barred when the action to recover the overpayment was brought are kept alive for purposes of setoff.

It is to be further observed that there could be no credit against the overpayment of income taxes until that overpayment was ascertained or allowed. McEachern v. Rose, 302 U.S. at page 61, 58 S. Ct. 84, 82 L.Ed. 46. No ascertainment was had in the present case until after the decision of the Supreme Court dealing with the effect upon tax liabilities of the settlement of the contest over Mrs. Longyear's will. That decision, reported in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, was made long after the right to collect estate taxes had expired on any theory.

The defendant's right of recoupment or credit is precluded by statute and the plaintiff is entitled to recover the amount of his overpayment without abatement.

Judgment affirmed.

CLARK, Circuit Judge, dissents with opinion.

CLARK, Circuit Judge (dissenting).

The interesting, if difficult, problem here presented requires us first to interpret and reconcile Supreme Court decisions which

the Court itself does not regard as conflicting. Lewis v. Reynolds, 284 U.S. 281, 52 S. Ct. 145, 76 L.Ed. 293, and Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, broadly favored the use, by way of equitable recoupment to either the taxpayer or the United States, of claims for taxes or for refunds, though barred by lapse of time from affirmative enforcement. This same rule was applied in Stone v. White, 301 U. S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, and McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, the leading cases here. In Stone v. White, supra, application of the principle allowed the United States to recoup, as against a claim for refund made by a plaintiff who was the beneficiary of a trust, a tax claim which was formally due from the trustees, but was eventually payable out of the income of the trust. McEachern v. Rose, supra, restated the principle, but held it could not apply against the express provisions of a statute. The conclusion is clear that equitable recoupment of otherwise outlawed claims for taxes or tax refunds will be had unless the tax law expressly forbids.

This conclusion seems a justified one under the federal revenue laws. Indeed, it is directly in line with the policy of the Revenue Act of 1938, the new § 820, 52 Stat. 581, 26 U.S.C.A., Internal Revenue Code, § 3801, of which was intended to "take the profit out of inconsistency" and substitute the theory of "correct adjustment," even at a comparatively late date, for theories of partial limitation, estoppel, and other attempts to secure quick repose for tax claims. Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 509, 528–532, 719; 39 Col.L.Rev. 460; 52 Harv.L.Rev. 300.[1] On the other hand, the theory of limitation applied in the opinion herewith results in a special exemption from the estate tax of a substantial estate subject thereto for the mere reason that the taxing authorities made a wrong guess (as it turned out in Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed.

119, 119 A.L.R. 410) as to the proper theory of taxation applicable to the situation.

My brothers find this prohibition against equitable recoupment here by ascribing a broad general content to the words of the statute, § 609(a) of the Revenue Act of 1928. Their argument is not without persuasive force; but I feel that it does less than justice to the decisions, particularly Stone v. White, and leaves some of the statutory provisions unexplained. If the prohibited credit of § 609(a) includes an estate tax credit under circumstances such as here disclosed, it is clear that the term comprises any tax claim under the federal revenue acts. That, I believe, is clearly contrary to the spirit of Lewis v. Reynolds and Stone v. White; nor does it take note of the limited reach of the McEachern case. And I do not believe Stone v. White can be disposed of by saying merely that the credit there was due from "a third person," i.e., the trustee. Unless the government's claim was equitably due from the plaintiff beneficiary, there would have been no ground for recoupment in any event. But the amount claimed by the government was due in the last analysis from the plaintiff, § 609(a) did not in terms apply, and hence the recoupment was allowed. This was true even though there—unlike our case—both claims arose out of income tax matters, as to which the commissioner has specific authority to make credits and refund of any balance. § 322(a), Revenue Act of 1928.[2] McEachern v. Rose, however, was within the terms of § 609(a) and § 322(a), since it involved a credit for income taxes due from the plaintiff.[3]

Moreover, the language of § 609(a) does not lend itself readily to such a broad interpretation of its terms. Had it been intended to prohibit any credit for any federal tax after the period of limitation had run, the natural course would have been to express this prohibition directly. Thus it could have been provided that a barred tax could be neither affirmatively collected nor

---

[1] Under this new statute the result of the McEachern case is no longer required. Cf. Kent in 27 Calif.L.Rev. 109, 155: "McEachern v. Rose * * * where the court reluctantly reached what it apparently regarded as an inequitable result under the compulsion of sections 607 and 609 of the 1928 Act, a compulsion now removed in such cases by section 820(b)(3)."

[2] Section 322(a) is in terms applicable

only to the income tax; it provides that when there has been an overpayment of "any tax imposed by this [the income tax] title [chapter]" such amount overpaid may be credited against "any income, war-profits, or excess-profits tax * * * then due."

[3] Compare Traynor, 33 Ill.L.Rev. 371, 395; 52 Harv.L.Rev. 496; Paul & Mertens on Taxation (1938, Cum.Supp.) § 53.17; also note 1, supra.

used as an offset against the taxpayer's claim for refund. But this statement seems studiously to have been avoided. Instead the statute refers to the converse situation, to make void not the barred claim, but the refund credit. This backhanded form of statement is not clear unless it is read as emphasizing the administrative process of making a credit. A direct payment of the barred claim is made recoverable under the earlier section, § 607; so here it is added that the attempt to make a credit towards it is simply a void act.

Such careful use of terms would be unusual if credit meant substantially any tax claim, as my brothers view it. It does, however, tie in with the limited and careful use of the term credit in the revenue laws, where it does not appear as a synonym for general setoff. It does appear in § 322(a) with reference to the income tax only as pointed out above; its use elsewhere is limited. The only reference to credits for overpayment of the estate tax seems to be made to the special case where the Board of Tax Appeals has found that the executor has made an overpayment. 26 U.S.C.A. § 512, Int.Rev.Code, §§ 910–912, which by its very limitations suggests the restricted connotation of the word.[4]

In the revenue laws, therefore, the word credit seems to be a word of art, having a specific denotation, rather than a word of broad and indefinite generality. This is more than a mere matter of adding or subtracting payments or refunds, or of the form which the checks to settle the balance should take. It is a matter of substance, to wit, what agency of government has the responsibility of passing on difficult questions of equitable recoupment beyond the fairly simple situations covered by section 322(a). To date the principles of such re-

coupment have been only partially developed by the Supreme Court. It seems, therefore, that those are problems for the courts. Indeed, the Board of Tax Appeals has held that it has no authority to apply principles of recoupment, Heyl's Appeal, 34 B.T.A. 223, and this view, I take it, is supported by United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 57 S. Ct. 855, 81 L.Ed. 1272.

I conclude, therefore, that the commissioner has no general power to make a credit of one tax against another of quite different kind. This would explain and justify the peculiar wording of § 609(a) referred to above. If his power of making credits is thus limited to the situation disclosed in § 322(a), we can understand the words "in any one year," following the word "liability" in § 609(a), an expression without meaning when applied to taxes not assessed on the yearly basis. Hence I believe that in the present case recoupment is not forbidden by the statute.[5] Compare Paul & Mertens on Taxation (1938, Cum. Supp.) § 53.17.

But even if I am wrong in this analysis of § 609(a), I should think the credit here was not outlawed at the time when it should be considered to accrue. For the estate tax in question could be enforced by a proceeding against a transferee by assessment or suit until November 21, 1936, section 316(b) (1), whereas the plaintiff's claim for refund here is based upon a payment made October 6, 1936, and a claim filed November 4, 1936, and disallowed November 14, 1936.

Other objections made to the recoupment and to its amount as against this transferee were overruled by the District Court. Lyeth v. Hoey, D.C., 27 F.Supp. 9, 10. I would reverse and allow the recoupment.

---

[4] The general provision allowing the commissioner to make refunds contains no express authority to make credits, though in 26 U.S.C.A., Int.Rev.Code, § 3770 (a) (2), section 607, Revenue Act of 1928, it is provided that an overpayment of a barred liability "shall be credited or refunded to the taxpayer," a provision necessary to take care of credits under § 322(a), as well as refunds generally.

[5] The opinion relies upon § 609(b) to

support its interpretation of § 609(a). As to this it may be suggested that (1) the meaning of § 609(b) construed in the light of other sections is by no means clear and (2) § 609(b) is not in terms limited as is § 609(a). Interpretation of § 609(b) is itself a problem which must await decision when the need therefor arises; I doubt if we can find from it much illumination for our present issue.