Estate of Ben F. Sternheim, deceased, Wells Fargo Bank & Union Trust Co., Executor v. Commissioner.
Estate of Sternheim v. Commissioner
Docket No. 111776.
United States Tax Court
1943 Tax Ct. Memo LEXIS 236; 2 T.C.M. (CCH) 311; T.C.M. (RIA) 43301; June 24, 1943
*236 Lawrence C. Baker, Esq., 14 Montgomery St., San Francisco, Calif., for the petitioner. Harry R. Horrow, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of an estate tax deficiency of $48,824.39. The questions in issue are whether there were deductible gifts to charity of (1) the remainder interest of an inter vivos trust which the decedent created during his lifetime, naming his sister as life beneficiary with remainder over to charities; and (2) the remainder interests of several testamentary trusts comprising the decedent's residuary estate which he bequeathed in trust for the benefit of several of his relatives and a friend for life, with remainders over to charities. A third issue relates to a deduction claimed on account of the liability of the estate as transferee for an income tax deficiency of a corporation, Sternheim Co., of which decedent was the principal stockholder. Other issues raised in the pleadings have been settled by stipulation. The issues in controversy will be considered separately in the order stated. The decedent died on April 9, 1940, a resident of San Francisco, California. *237 The petitioner herein, as executor, filed an estate tax return on behalf of the estate with the collector of internal revenue for the first district of California on July 9, 1941. The Inter Vivos Trust Findings of Fact. - Prior to his death the decedent, on June 9, 1938, transferred to the Wells Fargo Bank & Union Trust Co. of San Francisco, as trustee, policies of insurance on his life in the aggregate amount of $20,000, and savings accounts of approximately $73,000. The income of the trust was to be accumulated and added to principal during the life of the decedent. After his death the income was to be paid to his sister, Blanche M. Sternheim, for life. Upon her death the trust estate was to be divided among the Shriners Hospital for Crippled Children of San Francisco, Mount Zion Hospital, San Francisco, and the Community Chest of San Francisco, in whatever proportion the trustee in its sole discretion might elect. The trust agreement contained the following provision authorizing the trustee, in certain circumstances, to invade the trust principal: 11. The Trustee shall have the power in its uncontrolled discretion to use and apply such part of the principal of the *238 trust estate held for any beneficiary as it may consider suitable or necessary in the interest and for the welfare of such beneficiary in the event of sickness, accident, want, or other emergency of or to any of the beneficiaries then receiving the income from the trust estate or from any portion thereof; provided that, except as otherwise herein provided, not more than ten per cent (10%) of the principal of the trust estate shall be used or applied in any one year for said purposes or any of them. The decedent reserved the right to amend, alter, or revoke the trust at any time during his lifetime. The value of the trust estate at the date of decedent's death was approximately $97,000. The present value of the assets, which now consist principally of securities, is approximately $87,000. The trust has yielded annual net income since decedent's death of approximately $2,100. All of this income has been paid to the life beneficiary. At the date of decedent's death Blanche Sternheim was also the life beneficiary of a trust which she herself established in 1929. The decedent was named trustee of this trust and so served until his death. Soon thereafter the trust agreement was completely *239 revised under the power reserved to the trustor. In the revised trust agreement Wells Fargo Bank & Union Trust Co. was named as substitute trustee and has served as trustee up to the present time. The provisions of that trust agreement for the most part are not here material. In short, the settlor is entitled to all of the income and has a reserve power which gives her virtual control over the principal of the trust. The assets of the trust have a present value of approximately $138,700. The net income amounts to approximately $7,300 a year. At the time of decedent's death Blanche Sternheim was 60 years of age and in sound health. She resides at the Hotel California, San Francisco, where her ordinary living expenses amount to about $250 or $300 per month. She regularly saves from $250 to $300 a month out of the income which she receives from the above described trusts. She enjoys good health generally and is economical in her living habits. After decedent's death it was discovered that he had commingled assets of his own estate and those of the trust created by Blanche Sternheim of which he was trustee. Pending a partition of the commingled assets the income distributions from that *240 trust were suspended and Blanche Sternheim was given an allowance of $500 a month from the corpus of the inter vivos trust which decedent had created. This allowance was made by the trustee pursuant to the emergency clause of the trust instrument and upon the agreement of Blanche Sternheim to repay the amounts so withdrawn to the trust. A total of $1,500 was so paid to her and later repaid to the trust. Thereafter, and at some time not disclosed by the evidence, payments of $500 a month for a period of seven or eight months were made to Blanche Sternheim out of the principal of the inter vivos trust while the income distributions from both trusts were suspended pending settlement of an income tax controversy affecting the assets of the trusts. The income tax controversy referred to involved a transferee liability for income taxes of a corporation known as the Sternheim Co., the stock of which had all been owned by the decedent and Blanche Sternheim. The Commissioner asserted the transferee liability both against Blanche Sternheim and decedent's estate. In final settlement of the matter, and upon the insistence of Blanche Sternheim, the trustee of the inter vivos trust, *241 which was also the executor of the decedent's estate, paid to the collector of internal revenue $8,999.16 out of the principal of the trust in part satisfaction of her transferee liability. Opinion. - The respondent's position is that the trust provisions authorizing the invasion of the corpus for the benefit of the life beneficiary, as administered by the trustee, render the gift to charities of the remainder interest uncertain and the amount of such gift, if any, incapable of ascertainment. Petitioner's contentions are that the possibility of invasion of the trust corpus was so remote as not to affect the value of the gift of the remainder interest to charities. In Ithaca Trust Co. v. United States, 279 U.S. 151, the Supreme Court held that a bequest to charity of the remainder interest of a trust, after termination of a life estate in the testator's widow, was deductible from the gross estate as a gift to charity, notwithstanding that the trustees were authorized to expend as much of the trust corpus as necessary to maintain the widow "in as much comfort as she now enjoys." The court found that "the standard was fixed in fact and capable of *242 being stated in definite terms of money" and that "there was no uncertainty appreciably greater than the general uncertainty that attends human affairs." A gift to charity of the remainder interest of a testamentary trust was held deductible in Commissioner v. Bank of America Nat. Trust & Savings Assn., Executor (Will of Elisha Cobb Mayo), 133 Fed. (2d) 753, where the life beneficiary, the testator's sister, was to receive a monthly payment out of the trust income, and such additional amounts out of principal as might be reasonable should accident, illness, or other circumstances require. On authority of those and other like cases we would be constrained to hold, upon a consideration of the provisions of the trust instrument and the financial condition of the life beneficiary, that the probability of an invasion of the principal of the trust, to the detriment of the gift to charities, was so remote as not seriously to affect the value of the charitable gift. However, the facts are that since decedent's death there have been invasions of the corpus of the trust. On one occasion the trustee paid Blanche Sternheim an allowance out of the principal of *243 the trust for ordinary living expenses during a period when payments to her of the income from that trust, as well as the trust which she herself had created, were suspended pending settlement of matters affecting the assets of the trusts. The amount of the allowance was approximately $3,700. The corpus of the trust was again invaded to the extent of $8,999.16 for the purpose of paying a portion of Blanche Sternheim's transferee liability for the income taxes of the Sternheim Co. The record is not clear upon what authority the trustee permitted those withdrawals from the principal of the trust. The only explanation of record is that the withdrawals were made pursuant to the emergency clause of the trust agreement. A trust officer of the trustee bank, who handled the affairs of the trust, testified that the $8,999.16 payment was made as a compromise and because of the probable transferee liability of the trust for the full amount of the tax deficiency of the Sternheim Co. However that may be, we can not overlook these subsequent events in determining the probability of an invasion of the trust corpus as of the date of decedent's death. We can not say in the light of these facts, that *244 the probability of an invasion of the trust corpus was so remote as not to affect the value of the gift of the remainder interest to charities. There is no question between the parties but that gifts made to the charities named in the trust instrument would be deductible from the gross estate. The respondent has disallowed the deduction of the entire value of the remainder interest to charities upon the ground that the value of the gift is incapable of ascertainment. We think, however, that this is wrong. Blanche Sternheim, the beneficiary of the inter vivos trust, had a limited life expectancy. Even if the trust principal was invaded each year to the extent of 10 percent of the then principal there would still be a remainder interest which would go to the charities named. In the circumstances of the case we think it must be assumed that the principal of the inter vivos trust was liable to be invaded to the extent of 10 percent of the principal each year during the life expectancy of Blanche Sternheim. The remainder interest to charities, which can be determined by reference to standard mortality tables, is deductible from the gross estate. The Testamentary Trusts
Findings *245 of Fact. - The decedent bequeathed the residue of his estate to Wells Fargo Bank & Union Trust Co. in trust, directing the trustee to divide the residuary estate into six equal parts and to hold one of such parts in trust for the benefit for life of a cousin living in Berlin, Germany; another part for the benefit for life of a cousin living in Duisburg, Germany; another part for the benefit for life of a cousin living in San Francisco, and the remaining three parts for the benefit for life of a friend living in San Francisco. Each of the beneficiaries was entitled to receive all of the income from his or her trust for life and in addition the trustee was empowered in its sole discretion to invade the corpora of the trusts upon the same conditions and with the same limitations as in the inter vivos trust, as set out above. The three first mentioned life beneficiaries of decedent's residuary trust estate were 73, 71, and 74 years of age, respectively, at the time of decedent's death. The other life beneficiary was 61 years of age. The appraised gross value of decedent's estate as of the date of his death was $387,558.86. The estimated value of the assets of the estate as of *246 January 26, 1943, was $188,623.97. The shrinkage in value between those dates was due to the payment of claims against the estate of $11,887.47; administration expenses of $10,000; inheritance taxes of $12,000; claims for individual income tax of decedent upon the income tax liability of Sternheim Co. $114,376.63; and depreciation in the market value of the assets of the trust in the amount of approximately $50,000. This value of $188,623.97 does not take into account unpaid claims for additional executor's commissions and attorneys' fees estimated in the deficiency notice of $22,500. Because of unsettled tax claims the estate has not yet been closed and there has been no transfer of the residuary estate to the testamentary trustee. A total of $28,478.77 of income of the estate has been distributed to the beneficiaries of the testamentary trusts by the executor pursuant to order of the probate court. The estimated annual net income of decedent's estate as now constituted is approximately $7,000. Opinion. - The evidence of record does not show what independent funds or income of their own any of the beneficiaries of the testamentary trusts had at the time of decedent's death, *247 nor any of the other circumstances which might determine the probability of invasion of the corpora of the trusts under the emergency provisions of the will. We must assume therefore that, as in the case of the inter vivos trust, the corpus of each of the testamentary trusts was subject to the full amount of the payments to the beneficiary authorized by the will. Not more than 10 percent of the corpus of any of the trusts could be so paid out in any year. The beneficiaries were all of advanced ages. Based on mortality tables the remainder interest that was certain to go to charity is capable of definite determination. We think that the value of the remainder interests so computed is deductible from the gross estate. Deduction claimed on account of liability as transferee for income tax of Sternheim Co.
Findings of Fact. - After decedent's death the respondent asserted against his estate a transferee liability for a large amount of income taxes of a corporation known as the Sternheim Co. Decedent had owned two-thirds of the stock of that company and the remaining one-third had been owned by his sister, Blanche Sternheim. The respondent asserted transferee liability for the *248 taxes of the Sternheim Co. against the sister also. She and the representatives of decedent's estate tentatively agreed that, with a minor adjustment, they would bear the burden of the Sternheim Co. taxes in the proportion of stock ownership, and the asserted liability was settled accordingly. Thereafter, the respondent determined a further deficiency against Sternheim Co. of some $28,000 which he likewise asserted against decedent's estate, and also against Blanche Sternheim. The latter protested her liability for any such additional taxes and insisted that in any event her portion should be paid out of the funds of the inter vivos trust which decedent had created for her benefit. In final settlement of the matter $8,999.16 of the additional liability was paid out of the assets of the inter vivos trust. The amount finally paid by decedent's estate was $2,000 in excess of its two-thirds portion of the asserted liability. This $2,000 is said to have been allowed to Blanche Sternheim to reimburse her in part for attorneys' fees incurred in settling the tax controversy. The executor of decedent's estate agreed to this settlement upon advice of counsel and for reasons which *249 it considered advantageous to the estate. Opinion. - Petitioner contends that it is entitled to deduct from the gross estate not only the amount of the Sternheim Co. tax liability which was paid out of the assets of the estate but also the amount that was paid out of the assets of the inter vivos trust on behalf of Blanche Sternheim. Respondent contends that the estate is entitled to the deduction of only two-thirds of the total amount of the Sternheim Company's tax deficiency. His contentions are that since decedent owned only two-thirds of the stock of Sternheim Co. his estate is entitled to the deduction of only two-thirds of the company's tax liability; and that in no event can the estate claim a deduction on account of that portion of the liability which was paid out of the assets of the inter vivos trust estate. Section 812 of the Internal Revenue Code provides for the deduction from the gross estate, in determining the value of the net estate, of such claims against the estate as are allowed by the laws of the jurisdiction under which the estate is being administered, with certain exceptions not here material. If the decedent's estate had been solely liable *250 for the entire amount of the tax deficiency of the Sherman Co. and had paid or had lawfully assumed payment of the full amount, without any right of contribution from others, then undoubtedly it would be entitled to deduct the full amount as a claim against the estate. The facts are, however, that Blanche Sternheim as a one-third stockholder of the taxpayer corporation admitted her liability for one-third of the company's tax deficiency and paid her portion of the liability, as first determined by the respondent, on that basis. It is not shown that the executor of decedent's estate ever admitted any obligation to pay more than two-thirds of the asserted liability. It did agree to pay $2,000 over and above its two-thirds portion for the purpose, it is said, of assisting Blanche Sternheim in paying her attorney's fees in connection with the matter. That amount and the further amount of $8,999.16 which was paid out of the funds of the inter vivos trust, constituted excess over the two-thirds portion allocated to decedent's estate and are the specific amounts now in controversy. We think that the respondent properly disallowed the deduction of that portion of the transferee liability *251 that was paid out of the funds of the inter vivos trust. Apparently decedent's estate would have been entitled to a contribution from Blanche Sternheim for any amount in excess of its two-thirds portion of the liability. See Phillips-Jones Corporation v. Parmley, 302 U.S. 233. The Supreme Court in that case said: Since the enactment of section 280, as before, a bill in equity against a stockholder transferee is a remedy available to the Commissioner to enforce the tax liability of the corporation. Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L. Ed. 1350; Hulburd v. Commissioner, 296 U.S. 300, 303, 56 S. Ct. 197, 199, 80 L. Ed. 242. If he had resorted to that remedy he could have sued Phillips alone (see Phillips v. Commissioner, supra, 283 U.S. 589, at pages 603, 604, 51 S. Ct. 608, 614, 75 L. Ed. 1289; and if thereupon Phillips had paid the entire tax, obviously he could have brought a bill in equity against the other stockholders for contribution. *252 The right is no less where the Commissioner proceeds under section 280. This statute does not affect the duty of other stockholder transferees to contribute; it merely provides the Commissioner with a summary remedy for enforcing existing tax liability. * * * Blanche Sternheim had ample funds of her own with which to pay her full portion of the transferee liability. It is not clear what right she had to demand that the funds of the inter vivos trust be used for that purpose nor upon what authority the trustee permitted it. In his testimony the trust officer of the trust bank described it as a compromise settlement. The principal of the trust belonged neither to Blanche Sternheim nor to the decedent's estate. The remainder interest of the trust, after the life estate of Blanche Sternheim, was to go to named charities. The value of the trust was includable, in part, in decedent's gross estate because the trust was a revocable trust, but the trust assets did not pass to the executor and were not subject to probate as a part of decedent's estate. However that may be, we think that the respondent correctly disallowed the deduction of the $8,999.16 from decedent's gross estate. The *253 situation is somewhat different as to the $2,000 item. That amount also was over and above the two-thirds portion of the transferee liability allocable to the decedent's estate. Undoubtedly if the executor of decedent's estate had been required to pay more than two-thirds of the Sternheim Company's taxes because of its liability as a transferee it would have had a right against Blanche Sternheim for a contribution of the excess amount. Equitably Blanche Sternheim was liable for at lease one-third of the Sternheim Company's unpaid taxes. In these circumstances we do not think that it can be said that the $2,000 item was a deductible liability of, or claim against, the estate. Decision will be entered under Rule 50.